# CARRIE ANDERSON v. LESLIE S. HIGH.[1]

November 7, 1941.

No. 32,934.

*Harry T. Lathrop* and *Leslie S. High,* for appellant.
*Theodore Hollister,* for respondent.

LORING, JUSTICE.

In an action to recover the sum of $293.06 which plaintiff claimed defendant, an attorney, wrongfully converted, defendant counter-

[1]Reported in 300 N. W. 597.

claimed for legal services rendered plaintiff between September 1938 and February 1940. The jury returned a verdict for plaintiff for $283.06, the difference between the amount claimed to have been converted and the value the jury placed on defendant's services. Defendant appealed from an order denying his motion for a new trial. That appeal was dismissed, Anderson v. High, 210 Minn. 613,[2] 297 N. W. 321, judgment was entered, and defendant appeals therefrom to this court.

One of the numerous assignments of error raises the question whether the verdict is justified by the evidence. The record sustains a finding of the following facts: Prior to September 1938 defendant represented plaintiff in various legal matters for which he had been paid; part of that litigation involved the estate of Mary Anderson, plaintiff's mother. The plaintiff, along with other heirs, tried to establish a contract to make a will, Anderson v. Anderson, 197 Minn. 252, 266 N. W. 841, but was unsuccessful. During the time covered by the counterclaim in this action, the estate was being settled, and plaintiff authorized defendant to represent her at a meeting of the interested parties in September 1938. A week later defendant reported by letter to plaintiff that the charges of the executor had been discussed at the meeting and that he had objected to them. He also stated that he had represented plaintiff at a hearing in probate court September 23, 1938, and that he had inspected certain property belonging to the estate. December 8, 1938, the probate court ordered a partial distribution and allowed the executor's claim for expenses. The heirs, other than the executor, appealed from that order to the district court, and defendant joined, assuming to represent plaintiff. Defendant wrote plaintiff in April 1939 about a contract for deed of property in the estate, and plaintiff came to his office April 22, 1939, to sign the contract. At that time she told him not to pursue the appeal further. On April 28, 1939, defendant sent plaintiff a receipt,

---

[2]In the table of *Cases Reported* for Volume 210 Minnesota Reports (at pages vii and xi), the page for this case was erroneously designated as "642." It should be *"613,"* as cited above. [Reporter]

which she signed and returned, for $293.06, representing her share of the partial distribution. This amount was paid by check to defendant as attorney for plaintiff, and he cashed it and deposited the money in his account. He did not notify plaintiff that he had received the money. Some time later she learned about the check from one of the other heirs and sought to get the money from defendant. He refused to give it to her, claiming she owed him more than that amount for legal services.

■ This court will not set aside a verdict if there is evidence reasonably tending to support it. St. Anthony Falls Water-Power Co. v. Eastman, 20 Minn. 249, 270 (277, 312). Evidence tending to show the facts above recited sustains the trial court's refusal to direct a verdict for defendant or to set aside the verdict.

■ Defendant attacks the court's charge, claiming that therein prejudicial emphasis was given to the conference attended by defendant in behalf of plaintiff in September 1938. The one case cited by defendant which directly discusses this question states the rule:

"The trial judge must not, in charging the jury, single out and give undue prominence and emphasis to particular items of evidence, or circumstances, favorable to one of the parties only." Kincaid v. Jungkunz, 109 Minn. 400, 402, 123 N. W. 1082, 1083.

In the instant case, plaintiff conceded defendant's authority to represent her at the September meeting, and the court instructed as a matter of law that defendant did represent plaintiff on that occasion and repeated that fact when necessary in order to make it clear to the jury that they were to decide the value of that particular service. We think it was not prejudicially emphasized.

■ Defendant also assigns as error the following portion of the instructions, claiming that the court misstated the law: "In the absence of an agreement, Mr. High had no right to keep any portion of that $293.06 which he had not earned up to the time that it came into his hands." He maintains that his lien not only covered services then rendered but also future services then contem-

plated between the parties. We do not so construe the statute. Mason St. 1927, § 5695. Plaintiff could terminate the relation of attorney and client at any time, with or without cause, and be liable only for the reasonable value of services then rendered. Krippner v. Matz, 205 Minn. 497, 504, 287 N. W. 19; Lawler v. Dunn, 145 Minn. 281, 284, 176 N. W. 989. Even if the above portion of the charge, standing alone, were not strictly accurate, it was fully clarified by the later statement that, "You are to determine the reasonable value of the legal services rendered by Mr. High to the plaintiff, at her request, between September 1938 and February 24, 1940, and if the amount of such services, as determined by you, exceeds the amount of the check received by defendant April 28, 1939, then your verdict must be for the defendant in the amount· of the excess." Considering the charge as a whole, we feel that this point was not well taken.

■ We have carefully examined all the alleged instances of misconduct on the part of plaintiff's attorney. On the trial there was much acrimony displayed by him, and, as said by the court:

"It is true that some personal feeling seemed to crop out during the trial between the attorney for the plaintiff and the defendant, but this, no doubt, was unavoidable in view of the strained relations which existed between the defendant, an attorney at law, and the plaintiff's attorney.

"At times the plaintiff's attorney might have been particularly sarcastic and caustic during the trial of the action, but certainly not to the extent that would entitle the court to set aside the verdict of the jury in this case."

Some of the questions asked and arguments made by counsel were obviously calculated to arouse the prejudices of the jury and would have justified immediate interference by the court on its own motion. The administration of justice finds no place for the display of venom or the venting on opposing parties or counsel of personal ill will. It is the duty of trial courts at the first glimpse of vicious conduct to conduct trials so that such offenses may be

prevented. A trial should be a dignified presentation of issues; not a field for the display or satisfaction of animosities. The good standing of the courts in public estimation requires no less. Litigants and counsel should feel assured when they go into court that they will be protected from abuse. Respect for the dignity of judicial procedure and confidence in the fairness of the courts are important foundation stones of our republic, and anything that undermines that respect and confidence is a direct blow to our institutions. Courts and counsel should be alert against such an attack.

But, in the light of the trial court's statement that no prejudice resulted, with some reluctance, we take his view of the point.

Judgment affirmed.